Scofield, J.,
delivered the opinion of the court:
In 1863, three tracts of land, known respectively as Cherry Hill, Coffin Point, and McTtireous tract, in Beaufort County, S. C., were sold by the United States for direct taxes. The lands were bid off at the aggregate sum of $1,605. After deducting from the proceeds of sale the taxes, costs, and charges, a small surplus remains in the Treasury. The defendants concede that this surplus, whatever it may be, belongs to the owners of the land. The amount only is in dispute.
The commissioners, by whom the lands were sold, computed the surplus at $1,302.27, while the claimants make it $1,429. The difference arises from the amount of taxes that should *198 properly be deducted from the proceeds of sale. . The commissioners deducted $2 for every $100 of valuation, and theclaim-ants deduct only $1.17^ for the same valuation.
To determine which is right, we must examine the law under which the sales took place.
The Act August 5, 1861 (12 Stat. L., 295), fixes South Carolina’s proportion of the direct taxes at $363,570.67.
Under the Act June 7, 1862 (12 Stat. L., 422), commissioners were appointed to levy and collect these taxes from the “lands and lots of ground ” in that State. They were authorized to take the valuation of the lands made by the State next prior to January 1, 1861, if the same could be found: if not found, to make a valuation “in their judgment upon such evidence as may appear before them.”
Failing to secure the State valuation, they made one of their own, whereby “they fixed and established” the valuation of all the real estate in the State at $30,833,322.10^.-
They also fixed the valuation of these three tracts at $9,076.
Having thus the whole amount of taxes apportioned to the State, the valuation of all the lands of the State, and the valuation of these three tracts, the amount of taxes chargeable to these three tracts can be- accurately ascertained by following the rule of assessment prescribed in section 1 of the act of June 7, 1862, which is as follows:
“ Each and every parcel of the said lands, according to said valuation,is hereby declared tobe, by virtue of this act, charged with the payment of so much of the whole tax laid and apportioned by said act upon the State or Territory wherein the same is respectively situate, as shall bear the same direct proportion to the whole amount of the direct tax apportioned to said State or Territory as the value of said parcels of land shall respectively bear to the whole valuation of the real estate in said State or Territory according to the said assessment and valuation made under the authority of the same.” ,
Deducting from the proceeds of sale the taxes, interest, and all charges computed, according to this rule, leaves, as the defendants concede, a surplus of $1,429. The commissioners, by allowing $2 of tax for each $100 of valuation, instead of $1.17 as required by this rule, made a surplus of only $1,302.27. In this they made a mistake. The correct amount is $1,429.
The claimants, in each case, are entitled to the one-fifth part ■of that sum.
Thé correct amount of surplus being thus ascertained, has *199 the court jurisdiction to render judgment therefor, notwithstanding more than six years have elapsed since the money was deposited in the Treasury 1
Upon that subject we refer to section 36 of the act of August 5,1861, which is as follows:
“ In all cases where the property liable to a direct tax under this act may not be divisible, so-as to enable the collector by a sale of part thereof to raise the whole amount of the tax, with all costs, charges, and commissions, the whole of such property shall be sold, and the surplus of the proceeds of the sale, after satisfying the tax, costs, charges, and commissions, shall be paid to the owner of the property, or to his legal representatives, or if he or they can not be found, or refuse to receive the same, then such surplus shall be deposited in the Treasury of the United States, to be there held for the use of the owner or his legal representatives until he or they shall make application therefor to the Secretary of the Treasury, who upon such application shall, by warrants on the Treasury, cause the same to be ¡paid to the applicant.”
This section, in controlling the jurisdiction of this court, was considered by the Supreme Court in the case of The United States v. Taylor (104 U. S. R., 216), and therein the court said :
“The second question raised by the appeal is whether the Court of Claims had jurisdiction of a suit for such proceeds, when the application to the Secretary of the Treasury and the bringing of the suit therefor were both more than six years after the sale.
“ Section 1069 of the Bevised Statutes provides that every claim against the United States cognizable by the Court of Claims shall be fot ever barred, unless the petition setting forth a statement thereof is filed in the court within six years after the claim first accrues.
“The thirty-sixth section of the act of 1861 required, as we have seen, the surplus proceeds of the sale of land for taxes to be deposited in the Treasury, to be there held for the use of the owner or his legal representatives until he or they should make application therefor to the Secretary of the Treasury, who, upon such application, should, by warrant on the Treasury, cause the same to be paid to the applicant.
“ This section limits no time within which application must be made for the proceeds of the sale. The Secretary of the Treasury was not authorized to fix such a limit. It was his duty, whenever the owner of the land or his legal representatives should apply for the money, to draw a warrant therefor, without regard t.o the period which had elapsed since the sale. The fact that six or any other number of years had passed did not authorize him to refuse payment. The person entitled to .the money could allow it to remain in the Treasury for an in *200 definite period without losing his right to demand and receive-it. 1 It follows that if he was not required to demand it within six years, he was not required to sue for it within that time.
“ A construction consistent with good faith on the part of the United States should be given to these statutes. It would certainly not be fair dealing for the Government to say to the owner that the surplus proceeds should be held in the Treasury for an indefinite period for his use or that of his legal representatives, and then, upon suit brought to recover them, to plead in bar that the demand therefor had not been made within six years.
“The general rule is that when a trustee unequivocally repudiates the trust, and claims to hold the estate as his own,, and such repudiation and claim- are brought to the knowledger of the cestui que trust in such manner that he is called upon to assert his rights, the statute of .limitations will begin to run against him from the time such knowledge is brought home to him, and not before.”
The suit in Simons’s Case (19 C. Cls. R., 601) was brought to recover money which had been erroneously exacted by the direct-tax commissioners as interest on taxes. That case and the one at bar involve the same principle, but the court held that they had jurisdiction of it, and rendered judgment for the claimant. *
In Harrison’s Case (20 O. Cls. R., 175), the same question was-involved, and it was decided the same way.
Seabrooh’s Case (21 C. Cls. R., 37), which involved not only the same principles of law but exactly similar facts, was decided in favor of the claimant.
From these decisions the defendants did not appeal.
A new objection is now, for the first time, presented. Ik might have been raised with equal propriety in all the cases above cited. Either it was not considered of much importance, or was overlooked both by counsel and the court. It is based upon section 4 of the Act February 25, 1867 (14 Stat. R., 568),, which is as follows:
“ That the Secretary of the Treasury shall be authorized to-refund to persons from whom money has-been received without warrant of law, asín payment of dues under the direct-tax laws, the sums so illegally collected; such refunding to be ordered on the presentation, in each case, of satisfactory evidence of the illegal collection.”
The defendants contend, that the authority herein given does not extend to the Court of Claims. It is not necessary to con *201 trovert that position in order to maintain jurisdiction of this case.
The jurisdiction of the court does not depend upon that act. The Supreme Court, it will be observed, bases our jurisdiction in such cases upon section 1059 of the Revised Statutes, and section 36 of the act of August 5, 1861, above quoted, exempt, from the limitation of section 1069.
Jurisdiction under these acts and the decision of the Supreme Court, to entertain a suit for the recovery of “ the surplus of the proceeds of the sale” necessarily carries with it authority to ascertain what that surplus amounts to. That involves investigation and consideration of all the facts and data by which it is to be determined. Results arrived at by ministerial officers do not conclude the court.
If the'act of 1867 does not enlarge the jurisdiction of the court, it certainly does not diminish it. It simply authorizes the Secretary of the Treasury to refund, upon satisfactory evidence, certain taxes illegally collected. Whether an adverse decision by the Secretary upon such a claim would constitute a bar to its reconsideration in this court it is not necessary to decide. The facts in the case involve no such question.
The ownership of the claimants in case No. 15490 to one-fifth of the land sold, and of the claimant in case No. 15489 to another one-fifth, and also the several amounts due each are shown in the findings of facts and conclusion of law.
Judgment in each case will, be entered in accordance therewith.